87 F.3d 1316
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Will L. DAWSON and Derrick T. Willis, Defendants-Appellants.
 Nos. 95-4071, 95-4072.
 United States Court of Appeals, Seventh Circuit.
 Argued May 16, 1996.
Decided May 31, 1996.
 
 Before EASTERBROOK, RIPPLE and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Following a jury trial, co-defendants Will L. Dawson and Derrick T. Willis were both convicted on three drug charges: conspiring to possess cocaine and cocaine base with intent to distribute and conspiring to distribute both substances, in violation of 21 U.S.C. § 841(a)(1); possessing with intent to distribute some 700 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and possessing with intent to distribute some 400 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2. The court sentenced Dawson to a term of 220 months, and Willis to a term of 188 months. On this direct appeal, both men complain only that there was insufficient evidence to support their convictions. In such an appeal, "we must uphold the jury's verdict if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,' " United States v. Brown, 71 F.3d 1352, 1354 (7th Cir.1995), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Neither defendant has satisfied that exacting standard here, and we therefore affirm both convictions.
 
 
 2
 The government initially learned of Dawson's and Willis's activities on March 8, 1995, when a Muncie, Indiana, police officer made a routine traffic stop of a vehicle driven by Byron Beard. A search of the car turned up small quantities of marijuana and crack cocaine. The Muncie police told Beard, who was on probation at the time, that if he agreed to cooperate with them they would not prosecute him for possession of the drugs they had found. Beard found this proposition attractive and agreed to cooperate.
 
 
 3
 Beard told Joseph Winkle, of the Muncie Drug Task Force, that there had been a kilo and a half of cocaine in Room 219 of the Super 8 Motel the day before, and that he believed that a large amount still remained there. At Winkle's request, Beard donned a wire, took some marked money, and went back to Room 219 to buy more cocaine. The police monitored him as he did so, but the signal was poor, and the officers heard only snatches of the conversation. Beard returned, however, with two ounces of cocaine. Based on this buy and on other information Beard volunteered, the police obtained a search warrant for Room 219. Before they executed it, they sent Beard in for another try at a controlled buy. As before, the transmitter malfunctioned, and the police heard little of Beard's second buy.
 
 
 4
 The police waited with their search warrant outside Room 219 until about 9:30 p.m. Shortly before 9:30, three men drove into the motel parking lot, parked their car, and entered Room 219. About twenty minutes later, the police served their warrant. In the room, they found Will Dawson, Derrick Willis, and Michael Dawson. They found 700 grams of cocaine base and 400 grams of cocaine powder, much of which was packaged in small plastic bags. One bag, which contained 0.67 grams of cocaine, had a latent fingerprint that matched Will Dawson's. They also found two scales, a calculator, test tubes (for making crack from powder cocaine), and empty plastic zipper bags. Underneath the bed, they found the money they had given to Beard for the controlled buys. Finally, Willis had in his possession both the key to Room 219 and a small piece of crack.
 
 
 5
 At the trial, the principal evidence on which the government relied came from Byron Beard. Beard testified that he had known Dawson from high school days, and Dawson had helped Beard out from time to time when he needed money. In early 1995, Dawson introduced Beard to Willis at a party. A few days later, Dawson and Willis visited Beard at his home, and Dawson asked Beard to do him a "favor." Beard testified that he interpreted the request as one asking him to deal cocaine. The three drove to the Super 8 Motel on March 7, where Beard rented Room 219 under a false name. Beard kept one key and gave the other to Willis. Beard then left Willis at the motel, returned to Indianapolis, took some things from his home (including a scale), and returned to Room 219. When Willis let him into the room, Beard saw about 1 kilogram of cocaine spread out on a table, divided into little plastic bags marked "hard" and "soft." Beard then began delivering the cocaine to a low income housing project in south Muncie. It was on one of those runs that he was stopped.
 
 
 6
 In addition to Beard's testimony, the prosecution presented the corroborating testimony of Officer Winkle, the tapes made of Beard's controlled buys, and the testimony of the police officer who monitored those buys over the wire. Finally, the prosecution presented the physical evidence seized pursuant to the search warrant.
 
 
 7
 Willis argues that there was no credible evidence of an agreement between himself and anyone else relating to cocaine, that the evidence did not show that he actually possessed the drugs in question, and that he lacked the requisite intent to distribute. He argues further that Beard was untrustworthy, unreliable, and lacking in credibility. Dawson stresses the latter point in his brief, noting that Beard was a convicted drug dealer, recently out of prison, and on probation.
 
 
 8
 While we do not doubt that the facts might bear more than one interpretation, it was the task of the jury to decide whom to believe and which version of events to accept. Our review of the record demonstrates that there was ample evidence on which the jury could legitimately have relied in coming to their verdicts of guilty. Beard may have been an unsavory character, but it is established beyond all argument that a jury may choose to credit a scoundrel's testimony and reject a saint's. We therefore AFFIRM both convictions.